### SOUTHERN PILOT INSURANCE CO., Plaintiff,

v.

### CECS, INC., Jason Chatham, Louis Duckwall, Adriana Duckwall, and Robert Miller, as surviving spouse of Trisha Miller and as the administrator/executor of the estate of Trisha Miller, Defendants,

v.

### Michael Dillon and Little and Smith, Inc., Third–Party Defendants.

### Civil Action No. 1:11–CV–03863–AT.

United States District Court, N.D. Georgia, Atlanta Division.

Signed Jan. 25, 2013.

Adam Charles Joffe, R. Tyler Bryant, Robert Malcolm Darroch, Stephanie F. Glickauf, Goodman McGuffey Lindsey & Johnson, Atlanta, GA, for Plaintiff.

James Glenn Richardson, Talley Richardson & Cable, P.A., Dallas, GA, Lawrence J. LoRusso, Rebecca L. Sample, LoRusso Law Firm, P.C., Jennifer Suzanne Ivey, Linley Jones, Linley Jones, P.C., Atlanta, GA, for Defendants.

Brenton Sewell Bean, Christine L. Mast, Hawkins Parnell Thackston & Young, LLP, Atlanta, GA, for Third–Party Defendants.

## ORDER

AMY TOTENBERG, District Judge.

This is a declaratory judgment action. On September 6, 2011, Defendant Jason Chatham was driving a dump truck owned by Defendant CECS, Inc. ("CECS") when he and Defendants Louis Duckwall and Trisha Miller were involved in a motor vehicle accident. Trisha Miller died and Louis Duckwall was injured. CECS identified the dump truck as a scheduled vehicle on a Southern Pilot Business Auto Policy ("Policy"). However, Plaintiff Southern Pilot Insurance Company ("Southern Pilot") filed this instant action seeking a declaration that, because it properly cancelled the subject policy, it was not in force at the time of the accident.

In addition to filing an answer and counterclaim (Doc. 14), Defendants CECS, Inc. ("CECS") and Jason Chatham (the "CECS Defendants") filed a Third–Party Complaint against insurance agents Michael Dillon and Little and Smith Inc. ("Little & Smith"). Among other claims, the CECS Defendants assert that Dillon and Little & Smith breached a fiduciary duty by not acting in a timely manner to ensure that CECS had sufficient liability insurance coverage.

■ This matter is before the Court on the CECS Defendants' Motion for Partial Summary Judgment [Doc. 38] and Dillon and Little & Smith's Motion to Dismiss, or in the Alternative, Motion to Strike the Third–Party Complaint [Doc. 52].[1] The Court begins by considering the CECS Defendants' Motion for Partial Summary Judgment.

## I. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law. Id. The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249, 106 S.Ct. 2505.

---

1. The Third–Party Defendants filed their first Motion to Dismiss or in the Alternative, Motion to Strike [Doc. 41] the CECS Defendants' Third–Party Complaint on March 14, 2012. Subsequently, the CECS Defendants filed a timely amendment to the Third–Party Complaint in which they "incorporate the allegations" set forth in the Third–Party Complaint. (Doc. 47). The Court construes this as an amended complaint. An amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint. See Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir.2006); Fritz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir.1982). Thus, the Court DENIES AS MOOT the Third–Party Defendants' first Motion to Dismiss [Doc. 41].

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. *Id.* at 324–26, 106 S.Ct. 2548. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the factual background below. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1241 (11th Cir.2007) (observing that, in connection with summary judgment, courts must review all facts and inferences in light most favorable to non-moving party). This summary statement does not represent actual findings of fact. Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

## B. Background

Southern Pilot issued a policy of commercial automobile insurance to CECS. (Pl.s' Resp. Defs.' Statement Undisputed Facts (Doc. 44) ¶ 1; Chatham Aff. (Doc. 38–3) Ex. A.)[2] The policy period was from March 1, 2011 to March 1, 2012. (Doc. 38–3 Ex. A at 1.)

In August of 2011, Southern Pilot/General Casualty[3] sent to CECS a document entitled "Notice of Intent to Cancel" ("Notice of Intent"). (Doc. 44 ¶ 5; Doc. 38–3 Ex. B at 1–2.) This Notice of Intent was dated August 8, 2011. (Doc. 44 ¶ 5; Doc. 38–3 Ex. B.) CECS received this on August 17, 2011. *(Id.;* Doc. 38–3 Ex. B.) This Notice of Intent stated as follows:

> You are notified that the policies indicated with asterisk (* *) below will cancel in accordance with the terms and conditions of the policy unless the "minimum payment due" is received at the Home Office of the company prior to the effective date of the cancellation listed below.

(Doc. 38–3 Ex. B.) The Notice of Intent referenced the subject policy with an asterisk and stated that the "Cancellation Effective" date for that policy was August 23, 2011. *(Id.)* Finally, the Notice of Intent included a remittance indicating that the "minimum due" was $1,277.48. *(Id.)*

Along with the Notice of Intent, Southern Pilot contends that it sent CECS a notice of cancellation ("Notice of Cancellation"), also dated August 8, 2011. (Doc. 60–1 at 8–10 (Ex. J).) The Notice of Can-

---

**2.** The parties do not dispute that the relevant portions of the policy for purposes of this motion are attached as Exhibit A to Jason Chatham's affidavit (Doc. 38–3 Ex. A). (Doc. 44 ¶ 1.)

**3.** Though it is not clear precisely what the relationship is between General Casualty Insurance Company and Southern Pilot, this relationship is not material for purposes of the pending summary judgment motion.

cellation showed the "EFFECTIVE DATE OF NOTICE" as August 23, 2011. *(Id.* at 9.) In a section entitled "Cancellation," the document stated, "You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above." *(Id.)* Finally, the Notice of Cancellation indicated that the reason for cancellation was "Nonpayment of premium." *(Id.)*

The CECS Defendants appear to dispute that they received the Notice of Cancellation. Indeed, the circumstances surrounding the Notice of Cancellation are peculiar. Southern Pilot contends that it sent this Notice in the same envelope as the Notice of Intent to Cancel. (Pl.'s Supplemental Resp. Opp'n Defs.' Mot. Summ. J. (Doc. 60) at 4; Gragg Aff. (Doc. 60–1) ¶ 4.) However, when Southern Pilot initiated this action in November of 2011, Southern Pilot relied only on the Notice of Intent. (Compl. (Doc. 1) Ex. G.) It was not until Southern Pilot filed a supplemental response to the CECS Defendants' motion for partial summary judgment on May 18, 2012 (Doc. 60)[4] that Southern Pilot presented the Notice of Cancellation to the Court and asserted that it sent the Notice of Cancellation to CECS. Unsurprisingly, the CECS Defendants question how it is that Southern Pilot did not know of this Notice of Cancellation when it filed suit in November of 2011 or when it responded to their motion for partial summary judgment. *(See* Defs.' Supplemental Resp. Pl.'s Supplemental Resp. Opp'n Defs.' Mot. Summ. J. (Doc. 69) at 4–7.) Thus, there is

a genuine issue of fact as to whether Southern Pilot actually sent the Notice of Cancellation to CECS.

There is no dispute, however, regarding the remaining material facts. Southern Pilot sent CECS a letter entitled "Cancellation Memo," dated August 23, 2011. (Doc. 44 ¶ 7.) On August 24, 2011, a day after the purported cancellation, CECS transmitted an electronic check for premium payment to General Casualty. (Doc. 44 ¶ 6.) The amount of this check was removed from the CECS account on August 26, 2011. *(Id.)*

On September 6, 2011, while operating a dump truck owned by CECS, Defendant Jason Chatham was involved in a motor vehicle collision. (Doc. 38–3 ¶ 6.) Shortly thereafter, on November 9, 2011, Southern Pilot filed this instant action seeking a declaration that the subject policy was not in force at the time of the accident. (Doc. 1.)

## C. Analysis

■ The issue on summary judgment is narrow: whether Southern Pilot sent sufficient notice to CECS that its policy would cancel on August 23, 2011. The parties do not address, and thus the Court does not consider, any of the CECS Defendants' other arguments to support their contention that, regardless of the sufficiency of the Notices, the policy was in force at the time of the accident. The CECS Defendants' only contention here is that the Notice of Intent to Cancel it received failed to satisfy Georgia law regarding the sufficiency of notices of cancellation.

---

4. Southern Pilot attached the Notice of Cancellation to its supplemental response (Doc. 60) without first filing a motion for leave to file such response pursuant to the local rules. *See* LR 56.1(A), NDGa (stating that parties shall not be permitted to file supplemental briefs and materials on a motion for summary judgment except upon order of the court). Nonetheless, the Court treated this filing as a motion and granted it *nunc pro tunc.* (Doc. 68.) The Court also granted the CECS Defendants an opportunity to respond to this supplemental response, which they did on January 9, 2013. (Doc. 69.)

■ O.C.G.A. § 33–24–44 provides that, in order to cancel an insurance policy for failure of the named insured to pay its premiums on time, an insurer must provide written notice at least 10 days prior to the effective date of cancellation. O.C.G.A. § 33–24–44(d). The written notice must state "the time when the cancellation will be effective." O.C.G.A. § 33–24–44(b). This statute does not dictate a particular form of the notice. *See id.; see also Reynolds v. Infinity Gen. Ins. Co.,* 287 Ga. 86, 694 S.E.2d 337, 341 (2010). However, under Georgia law, the cancellation notice is effective only if it "positively and unequivocally state[s] that the cancellation is taking place." *Reynolds,* 694 S.E.2d at 341. "The mere fact that the notice contains an option for the insured to avoid the imminent cancellation does not alter the clear statement to the policy holder that coverage is being terminated because the premium was not timely paid." *Id.*

■ Whether the Notice of *Intent* to Cancel (Ex. B) here meets the statutory requirements of insurance cancellation notices in Georgia is a close call. However, there is no question that the Notice of *Cancellation* (Ex. J) is sufficient. The Notice of Cancellation unequivocally states that the policy will cancel on August 23, 2011 and the reason for cancellation is the "Nonpayment of premium." (Ex. J.) Just as in *Reynolds,* the fact that the Notice of Intent to Cancel "contains an option to avoid imminent cancellation" by promptly paying the amount due does not render the Notice of Cancellation ineffective. *Reynolds,* 694 S.E.2d at 341. Moreover,

even if the Policy requires that a sufficient notice of cancellation state the reason of cancellation, as the CECS Defendants argue, the Notice of Cancellation clearly states that the policy is cancelled because of non-payment of premiums. Thus, if Southern Pilot sent both notices to CECS, as it claims to have done, the notices are sufficient under Georgia law to cancel the Policy. As it is unclear at this point whether Southern Pilot sent both notices, the Court must deny the CECS Defendants' motion for partial summary judgment.[5]

■ The CECS Defendants finally argue—in their reply brief—that the notices are insufficient to cancel the Policy for failure to pay premiums when due because the Policy imposes no requirement to pay premiums on any particular date. As an initial matter, courts generally will not consider issues raised for the first time in a reply brief. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1352 n. 11 (11th Cir.2009) (treating argument as waived where it was raised for the first time in a reply brief); *see also United States v. Georgia Dep't of Natural Res.,* 897 F.Supp. 1464, 1471 (N.D.Ga.1995) (citing *United States v. Oakley,* 744 F.2d 1553, 1556 (11th Cir. 1984)); *Mack v. The Housing Auth. for the City of Athens, Ga.,* No. 3:09–CV–62 (CDL), 2010 WL 797211, *3 n. 2 (M.D.Ga. Mar. 3, 2010) (Land, J.) ("Arguments made for the first time in a reply brief are not properly before the Court and should not be considered by the Court.") (citing *Herring v. Sec'y, Dep't of Corrs.,* 397 F.3d 1338, 1342 (11th Cir.2005)).[6]

5. The Court does not reach the issue of whether the Notice of Intent (Ex. B) alone is sufficient to cancel the Policy under Georgia law because Southern Pilot now relies on both Notices in its defense to the CECS Defendants' motion for summary judgment.

6. The CECS Defendants imply that they in fact made this argument in their opening summary judgment brief. *(See* Doc. 50 at 6.) This is not so. The CECS Defendants, instead, argued that Southern Pilot failed to comply with the terms of the policy "by not

■ In any case, the CECS Defendants have not fully developed this argument, and neither party has attempted to establish when the premiums were actually due under the Policy. It is true that here, the Policy does not specify when premium payments are due. And under Georgia law, "[a] purported notice of cancellation (for nonpayment of premium) sent before the premium is due merely constitutes a demand for payment, and is ineffective to cancel the policy." *Timely Entm't Int'l, Inc., et al. v. State Farm Fire & Cas. Co.,* 208 Ga.App. 467, 430 S.E.2d 844, 846 (1993) (citing *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Person,* 164 Ga.App. 488, 297 S.E.2d 80 (1982)). However, it does not follow that because the Policy is silent as to when premiums are due, the insurer must be "force[d] ... to accept premium payments in whatever portion of the total premium that the insured felt like paying at any given time." Couch on Insurance § 72:1 (3d ed. 2012) ("[I]t is universally acknowledged that an insurer cannot be forced to accept less than the premium due and grant pro rata coverage."). In fact, the parties can, through course of conduct, establish when policy premiums are due. *See State Farm Mut. Auto. Ins. Co. v. Drury,* 222 Ga.App. 196, 474 S.E.2d 64, 66–67 (1996) ("[A]n insurance company which by a course of dealing leads an insured to rely upon notice from the company as to the due date of premium payments is estopped to complain of a late payment caused by its failure to give such notice in a particular instance."). Neither party attempted to establish the premium due date, and the Court declines to do so on its

own. Without identifying the premium due date, the Court cannot assess whether CECS had failed to pay its premium on time, and thus cannot reach the merits of this argument.

For the foregoing reasons, the Court **DENIES** the CECS Defendants' motion for partial summary judgment [Doc. 38].[7]

## II. MOTION TO DISMISS OR STRIKE THIRD–PARTY COMPLAINT

### A. Introduction

The Court now turns to the Third–Party Defendants' Motion to Dismiss, or in the Alternative to Strike the Third–Party Complaint (Doc. 52). After being served with the Complaint, the CECS Defendants asserted a counterclaim against Southern Pilot on January 12, 2012. (Doc. 14.) In this counterclaim, the CECS Defendants sought a declaration that the subject insurance policy was in force at the time of the dump truck accident. *(Id.)* In an apparent attempt to cover all their bases, the CECS Defendants also filed a near-contemporaneous Third–Party Complaint against Michael Dillon and Little and Smith, Inc., the insurance agents working with CECS to obtain automobile insurance. (Doc. 16.) This Third–Party Complaint is the subject of the instant motion.

The Third–Party Complaint restates almost exactly the allegations in the CECS Defendants' counterclaim against Southern Pilot. *(Compare* Doc. 14 at 29–46, *with* Doc. 16 at 15–30.) Moreover, Counts I, II and III of the Third–Party Complaint do

including any reason or explanation for the purported action to cancel." (Doc. 38–2 at 14.)

7. Although Southern Pilot requested that summary judgment be entered in its favor *(See* Doc. 42 at 3), Southern Pilot did not itself move for summary judgment on this

issue and therefore has no motion for summary judgment pending before this Court. Moreover, neither party moved for summary judgment on the CECS Defendants' claims of Accord and Satisfaction (Count I) and Appropriation of Payments (Count III). (Doc. 14 at 29–31 and 35–38.)

not assert any claims against the Third–Party Defendants. (Doc. 16 at 15–24.) Instead, they simply put forth arguments in support of the CECS Defendants' counterclaim against Southern Pilot seeking a declaration that the insurance policy at issue here was in force at the time of the accident. *(See id.)* And in many ways, Counts IV, V and VI do the same, arguing that the Third–Party Defendants' actions should be imputed onto the insurer. *(See id.)* To the extent these claims are merely reassertions of the CECS Defendants' declaratory judgment counterclaim against Southern Pilot, and make no allegations against the Third–Party Defendants, they are **DISMISSED.** *See Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))).

After stripping these allegations from the Third Party Complaint, the Court finds that Count IV ("Breach of Fiduciary Duty") is the only remaining claim against the Third–Party Defendants.[8]

### B. The Remaining Third–Party Claim

In Count IV, the CECS Defendants allege that Dillon and Little & Smith breached a duty owed to them "by not acting in a timely manner to ensure that [automobile] liability insurance coverage was afforded for all motor vehicles being operated on the roads of the State of Georgia." (Doc. 16 ¶¶ 90–92.) According to

the CECS Defendants, this breach resulted in "a situation where there is a question as to liability coverage" and as a result, "CECS has accrued attorney's fees, costs and damages and will continue in the future to be put into peril for attorney's fees, costs and damages." (Doc. 16 ¶¶ 96–97.) The CECS Defendants further assert that, "[i]n the event [they] are forced to answer to any claim or satisfy a judgment as a result of [the] September 6, 2011 motor vehicle collision, they are entitled to recover from Michael Dillon and Little & Smith all costs, attorney's fees and damages which may be occasioned to them." *(Id.* ¶ 99.)

■ The Third–Party Defendants move to dismiss, or alternatively to strike, the Third–Party Complaint, putting forth two arguments. First, the Third–Party Defendants argue that impleader is improper under Rule 14 because the breach of fiduciary duty claim is not derivative of the main claim here, one for declaratory judgment. Second, the Third–Party Defendants argue that the breach of fiduciary duty claim is not ripe for review, and thus this Court lacks subject matter jurisdiction to address it. The Court will consider each of these arguments in turn.

### C. Analysis
#### 1. Impleader Under Rule 14

■ Rule 14 provides that a defendant can implead a third-party to assert claims against it if such claims are dependent upon the outcome of the main claim. Fed.R.Civ.P. 14.

Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third per-

---

8. The Court will consider the allegations in Counts V of the CECS Defendants' Amended Third–Party Complaint as part of their breach of fiduciary duty claim. Count VI, however, does not assert a claim against the Third–Party Defendants, but rather, provides support for the CECS Defendants' contention that that their claim for breach of fiduciary duty is ripe.

son's liability on that claim is *in some way dependent* upon the outcome of the main claim. Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim.

*U.S. v. Olavarrieta,* 812 F.2d 640, 643 (11th Cir.1987) (emphasis added), *cert denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). "[W]hether a third-party defendant may be impleaded under Rule 14 [is] a question addressed to the sound discretion of the trial court." *DeRubeis, et al. v. Witten Techs., Inc.,* 244 F.R.D. 676, 682 (N.D.Ga.2007) (citing 6 Wright, Miller & Kane, Federal Practice and Procedure § 1443 (2d ed.1990)). Thus, the Court must now determine whether the third-party claim for breach of fiduciary duty is "in some way dependent upon the outcome of the main claim." *Olavarrieta,* 812 F.2d at 643.

The main claim here is one for declaratory relief. Southern Pilot seeks a declaration that the subject policy was not in force at the time of the accident. The CECS Defendants' third-party claim, in turn, seeks to hold Dillon and Little & Smith liable for failing to acquire liability insurance. This claim depends upon whether the subject policy was in force at the time of the accident; only if it were not would the CECS Defendants have a claim against their insurance agents. As the third-party claim is dependent upon the outcome of the main claim, impleader is appropriate here. *See Am. Fidelity & Cas. Co., Inc. v. Greyhound Corp.,* 232 F.2d 89, 91–92 (5th Cir.1956) (holding that in a declaratory judgment action, it was proper to allow a third-party tort claim under Rule 14);[9] *see also* Moore's Federal Practice § 14.04[2] n. 7 (3d ed.2012) (noting that courts have properly allowed impleader in a declaratory judgment action where the third-party plaintiff asserts a claim against its agent for failing to obtain insurance) (collecting cases).[10]

The Court recognizes that some courts take a different view, strictly reading Rule 14(a) to preclude a third-party complaint in a declaratory judgment action. *See e.g., Southern Ins. Co. v. Bennett,* 680 F.Supp. 387 (M.D.Ga.1988) (holding that defendant in a declaratory judgment insurance coverage action could not assert a third-party claim against his insurance agent because such claim was not one for indemnification); *Lincoln Nat'l Life Ins. Co. v. Barba,* No. 08–1777(SRC), 2010 U.S. Dist. LEXIS 68078, at *3 (D.N.J. July 8, 2010) (dismissing a third-party complaint where the underlying complaint is one for declaratory judgment); *U.S. Fire Ins. Co. v. Reading Mun. Airport Auth. et al.,* 130 F.R.D. 38, 39 (E.D.Pa.1990) (same). Rule 14(a)(1) provides that a third-party plaintiff may only implead a party "who is or may be liable to it for all or part of the claim against it." Fed.R.Civ.P. 14(a)(1). Indeed, a strict reading of this Rule would suggest that, because a declaratory judgment action does not seek to hold the third-party plaintiffs liable for any claims, "there can be no nonparty here who might be liable to the Third–Party Plaintiffs for all or part of the declaratory judgment claim against them." *Barba,* 2010 U.S. Dist. LEXIS 68078, at *3.

However, the former Fifth Circuit, whose decisions are binding on this Court,

---

**9.** In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981.

**10.** The Court also notes that, as the Third–Party Complaint does not assert a federal claim, and the Third–Party Plaintiffs and Defendants are not diverse, there is no independent basis for jurisdiction.

considered and rejected this argument, stating that it "places too restrictive a meaning on the words 'all or part of the plaintiff's claim' in the Rule." *Am. Fidelity & Cas. Co., Inc.*, 232 F.2d at 91. Indeed, although perhaps technically the CECS Defendants do not face immediate liability in this declaratory judgment action, in reality their liability is on the line. Thus, this Court rejects the Third–Party Defendants' argument and finds that impleader is appropriate in this case.

### 2. Ripeness of the CECS Defendants' Claim

■ The Third–Party Defendants' next argument is more persuasive. They argue that the CECS Defendants' breach of fiduciary duty claim is not ripe, and thus this Court does not have subject matter jurisdiction to hear the case.

■ Article III of the United States Constitution limits the jurisdiction of this Court to "cases and controversies." U.S. Const. art. III. "The ripeness doctrine is one of several justiciability considerations that are at the core of the case or controversy requirement." *Gen. Motors LLC v. Canton Motor Sales, Inc.*, No. 1:12–cv–1994–JEC, 2012 WL 5930623, at *2 (N.D.Ga. Nov. 27, 2012) (Carnes, C.J.) (citing *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir.2010)). Under this doctrine, a federal court can only hear cases where there is "sufficient injury." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir.1995). That is, the Court will decline to address a claim that is not "sufficiently mature, and [where] the issues [are not] sufficiently defined and concrete, to permit effective decisionmaking by the court." *Id.* "A claim that is not ripe for determination is subject to dismissal for lack of subject matter jurisdiction under Federal Rule 12(b)(1)." *Gen. Motors LLC*, 2012 WL 5930623, at *2 (citing

*Dermer v. Miami–Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir.2010)).

■ "A ripeness analysis involves the evaluation of two factors: the hardship that a plaintiff might suffer without court redress and the fitness of the case for judicial decision." *Dermer v. Miami–Dade County*, 599 F.3d 1217, 1221 (11th Cir.2010) (internal quotation marks omitted) (quoting *Elend v. Basham*, 471 F.3d 1199, 1211 (11th Cir.2006)). Both factors suggest that dismissal is appropriate here.

First, the third-party claim here is not fit for judicial decision. The CECS Defendants assert a breach of fiduciary duty claim against CECS' insurance agents. They contend that "in the event" this Court determines that CECS was not insured at the time of the accident, they are entitled to recover from the Third–Party Defendants for this breach. As such, this action "depends upon the presence of damages and, therefore, may not be maintained until the principal suffers a loss." *Hoffman v. Ins. Co. of N. Am.*, 241 Ga. 328, 245 S.E.2d 287, 289 (1978). Although the CECS Defendants assert that they have already incurred damages in the way of costs associated with defending this declaratory judgment action, this is not the type of injury that gives rise to a breach of fiduciary duty action against an insurance agent. Instead, the relevant injury is one that arises when the insured is "subjected to liability, for which it was not covered, in a pending third-party tort suit." *Id.* at 289 (citing *Hoffman v. Ins. Co. of N. Am.*, 130 Ga.App. 777, 204 S.E.2d 520, 521 (1974)).

The CECS Defendants have not alleged that they are currently "subjected to liability[ ] for which they are not covered." [11] Moreover, their liability is dependent upon the resolution of the declaratory judgment action in this case. Thus, their third-party claim is not fit for review at this time. *See*

---

11. In fact, the CECS Defendants have not

even alleged that there is a pending third-

*Mt. Hawley Ins. Co. v. Giant Oil, Inc.*, No. 8:09–cv–2227–T–23TGW, 2010 WL 1525518, at *1–2 (M.D.Fla. Apr. 15, 2010) (dismissing as unripe a tort action against an insurance agent finding that such action is dependent upon the occurrence of a declaratory judgment adverse to the third-party plaintiff); *see also Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir.2010) ("Specifically, if a plaintiff's claimed injury depends on the resolution of other judicial proceedings, there may well be fitness concerns that render the plaintiff's claim presumptively unripe." (citing *In re Lowenschuss*, 170 F.3d 923, 932 (9th Cir.1999) and *Lincoln House, Inc. v. Dupre*, 903 F.2d 845 (1st Cir.1990))).

■ Second, there is no indication that dismissing this action without prejudice results in hardship. As previously noted, if this Court determines that the subject policy was not in force at the time of the accident, the CECS Defendants could then bring their state law breach of fiduciary duty claim against the Third–Party Defendants in state court.[12] *See Hoffman*, 245 S.E.2d at 289 (holding that a claim for breach of fiduciary duty against an insurance agent for failing to procure insurance accrues for purposes of the statute of limitations at the moment the insured is subjected to liability for which it is not covered).

For these reasons, the CECS Defendants' breach of fiduciary duty claim against the Dillon and Little & Smith is not ripe. Pursuant to Rule 12(b)(1), the Court **DISMISSES WITHOUT PREJUDICE** this third-party complaint for lack of jurisdiction.

party tort suit against them. *(See* Doc. 16 at ¶ 99.)

12. As mentioned, there is no independent basis for the third-party claim to be in federal court. *See supra* n. 10.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant CECS, Inc. and Jason Chatham's Motion for Partial Summary Judgment [Doc. 38] and **GRANTS** Third–Party Defendants Michael Dillon and Little and Smith, Inc.'s Motion to Dismiss the Third–Party Complaint [Doc. 52].[13] The Third–Party Complaint is **DISMISSED WITHOUT PREJUDICE.**

The Court **ORDERS** Plaintiff and the Defendant CECS, Inc. and Jason Chatham to private mediation. The parties shall advise the Court within 10 days of the date of this Order if they cannot agree on a private mediator, in which case the Court will appoint one. Mediation shall conclude within 45 days of the date of this Order.

13. The Court **DENIES AS MOOT** the Third–Party Defendants' first Motion to Dismiss [Doc. 41].